IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBERTO CAMACHO JIMENEZ, *et al.*, | § § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-cv-0834 |
| | § | |
| CARLOS GARCIA DELGADO and NOBERTO SAUL TERRAZAS ARREOLA, | § § § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

This employment case is before the Court on the Second Motion to Dismiss filed by Defendants Carlos Garcia Delgado ("Delgado") and Noberto Saul Terrazas-Arreola ("Terrazas-Arreola," and, together with Delgado, "Defendants") [Doc. # 12]. Also before the Court is the Motion to Remand filed by Plaintiffs Gilberto Camacho Jimenez, Ana Bertha Rodriguez, and Candido Soto Velazquez (collectively, "Plaintiffs") [Doc. # 16]. Plaintiffs filed a Response to Defendants' Motion to Dismiss [Doc. # 17], to which Defendants filed a Reply [Doc. # 22]. Defendants filed a Response to Plaintiffs' Motion to Remand [Doc. # 25].[1] Having considered the

---

[1] Defendants filed their Motion to Dismiss at Doc. # 12 and a brief in support of that motion at Doc. # 13. Plaintiffs filed their Motion to Remand at Doc. # 16 and a brief in support of that motion at Docs. # 18 and # 19. Plaintiffs filed a Response to the Motion to Dismiss at Doc. # 17 and a brief in support of the Response at Doc. # 20.
(continued...)

parties' briefing, the applicable legal authorities, and all matters of record, the Court **denies** Plaintiffs' Motion to Remand and **grants** Defendants' Motion to Dismiss.

## I.   <u>BACKGROUND</u>

Plaintiffs are former employees of the Consulate General of Mexico in Houston, Texas (the "Consulate").  Plaintiff's First Amended Original Petition [Doc. # 1-2] ("Complaint"), ¶ 5.  On or about December 28, 2010, Plaintiffs' employment at the Consulate ceased.[2]  *Id.*  On December 28, 2012, Plaintiffs filed this suit in the 152nd Judicial District Court in Harris County, Texas, against Terrazas-Arreola, Delgado, the United Mexican States ("Mexico"), and the Consulate, alleging claims of negligence, negligence per se, gross negligence, and breach of contract or implied contract [Docs. # 1-1 and # 1-2].  Plaintiffs assert that their employment was terminated for "refusing to participate in unlawful activities."  Complaint, ¶ 5.[3]

---

[1]    (...continued)
The briefs docketed at Docs. # 18, # 19, and # 20 are identical.

[2]    Plaintiffs each claim that his or her employment was terminated. Complaint [Doc. # 1-2], ¶ 5.  Defendants counter that Plaintiffs' employment contracts had expired and were not renewed.  Defendants' Reply [Doc. # 22], at 2.

[3]    Gilberto Camacho Jimenez and Candido Soto Velazquez state that "[Terrazas-Arreola] and [Delgado] wanted my self [*sic*] and others to recruit persons, both male gay and female straight to have sex with them and their friends."  Affidavit of Gilberto Camacho Jimenez [Doc. # 17-5]; Affidavit of Candido Soto [Doc. # 17-7].  Ana Bertha Rodriguez Ramirez avers in an affidavit that "[Terrazas-Arreola] and [Delgado] wanted myself and other persons to have sex for money with them and/or other persons associated with them.  For this they would protect our jobs and make sure we received additional compensation."  Affidavit of Ana Bertha Rodriguez
(continued...)

Defendants, along with Mexico and the Consulate, removed the case to this Court on March 25, 2013 [Doc. # 1].

On June 11, 2013, Terrazas-Arreola, Delgado, Mexico, and the Consulate filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(4), and 12(b)(5) [Doc. # 7].  The Court granted the motion as to the country of Mexico and its Consulate, but denied the motion without prejudice as to the Defendants at bar.  Defendants' original Motion to Dismiss urged that each defendant was a "foreign state" and immune from suit under the Foreign Sovereign Immunities Act of 1976 (the "FSIA").  Memorandum and Order [Doc. # 11], at 2.  The Court held that both Mexico and the Consulate were "foreign states" within the meaning of the FSIA, *id.* at 3-4, and thus the Court was without subject matter jurisdiction to adjudicate the case against those entities, *id.* at 6-7.  This Court also held that Terrazas-Arreola and Delgado were *not* foreign "states" under the FSIA and denied the motion as to them.  *Id.* at 4-5.  The Court reserved decision on the question whether "Defendants . . . [could] assert a basis for immunity other than the FSIA, such as Article 43 of the Vienna Convention on Consular Relations." *Id.* at 4 n.2.

Plaintiffs seek remand of this case to state court pursuant to 28 U.S.C.

---

[3]      (...continued)
Ramirez [Doc. # 17-6].

§ 1447(c).  Plaintiffs' Motion to Remand [Doc. # 16], at 3.  Defendants argue there is jurisdiction under 28 U.S.C. § 1351 for the Court to decide the application of the Vienna Convention, but that under the Convention, there is no subject matter jurisdiction because Defendants are protected by the doctrine of consular immunity.  Defendants' Response [Doc. # 25], at 3-4.

## II.    LEGAL STANDARD

### A.    Removal Jurisdiction

Federal jurisdiction is limited.  Congress allows for removal to federal court of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a). The party invoking this Court's removal jurisdiction bears the burden of establishing federal jurisdiction.  *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001);  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997) (citation omitted).  The removal statute "is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns."  *Frank*, 128 F.3d at 922; *see also Manguno*, 276 F.3d at 723 ("Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.").  In evaluating the propriety of removal,

this Court must evaluate all factual allegations in the light most favorable to the plaintiff, must resolve all contested issues of fact in favor of the plaintiff, and must resolve all ambiguities of controlling state law in favor of the plaintiff.  *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (citations omitted).

### B.    <u>Subject Matter Jurisdiction</u>

Defendants' argue, pursuant to Federal Rule of Civil Procedure 12(b)(1), that this Court has authority to decide its subject matter jurisdiction to the extent that it must ascertain the effect of the Vienna Convention.  Memorandum in Support of Defendants' Second Motion to Dismiss [Doc. # 13], at 10.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted).

In considering a challenge to subject matter jurisdiction, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  *Id.*  When the court's subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing it.  *See Castro v. U.S.*, 560 F.3d 381, 386 (5th Cir. 2009).  A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff

cannot prove a plausible set of facts that establish subject matter jurisdiction.  *Id.*  The Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff."  *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2007).

### C. <u>Vienna Convention on Consular Relations</u>

Whether the causes of action against Defendants are subject to the jurisdiction of this Court is governed by the Vienna Convention on Consular Relations (the "Vienna Convention").  Federal district courts have "original jurisdiction, exclusive of the courts of the states, of all civil actions and proceedings against (1) consuls or vice consuls of foreign states . . ."  28 U.S.C. § 1351.  That jurisdiction only extends, however, so long as it is not limited by treaty.  *See Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir. 1987) ("*Gerritsen I*") ("By virtue of [§ 1351] the federal courts may exercise jurisdiction over the two consuls general and one vice consul who are defendants in this action . . . Jurisdiction, however, may be limited by treaty.").  Thus, under the Vienna Convention, "Consular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving state in respect of acts performed in the exercise of consular functions."[4]  Vienna Convention on Consular Relations, April 24, 1963, 21

---

[4] Article 43 also provides two exceptions to this rule for certain civil actions.  *See* (continued...)

U.S.T. 77, T.I.A.S. 6820, 596 U.N.T.S. 261, Art. 43(1).  "The purpose of consular

immunity is not to benefit individuals but to ensure the efficient performance of

functions by consular posts on behalf of their respective states."  *Ewald v. Royal*

*Norwegian Embassy*, No. 11-2116 SRN/SER, 2012 WL 245244, at *3 (D. Minn. Jan.

26, 2012) (unpublished).  Courts have cautioned against a narrow reading of this

provision, stating:

> [A] narrow reading of the treaty would be inconsistent with its apparent
> purpose to eliminate the last vestiges of the notion that a consul was
> simply a 'commercial representative' . . . [I]t would hardly be
> appropriate, in the face of such a broadly worded provision as Art. 5(m),
> for the court to second-guess the State Department in this regard for
> purposes of determining whether consular immunity exists.

*Heaney v. Gov't of Spain*, 445 F.2d 501, 505 (2d Cir. 1971) (Friendly, J.).  While the

effects of consular immunity can often be harsh, the Court is bound by the limits of

jurisdiction granted to it by Congress through laws and treaties.  *See Ford v. Clement*,

834 F. Supp. 72, 74 (S.D.N.Y. 1993) (Sotomayor, D.J.) ("Thus, no matter how

troubling Mr. Clement's alleged actions may be, the Court cannot address them if he

is immune from the jurisdiction of this Court."); *Koeppel & Koeppel v. Fed. Republic*

*of Nigeria*, 704 F. Supp. 521, 524 (S.D.N.Y. 1989) (Leval, J.) ("Some unfairness to

the wronged party is inherent in the notion of immunity.").

---

[4]      (...continued)
        Vienna Convention, Art. 43(2).  Neither exception is applicable to the claims alleged.

As numerous courts have recognized, determining whether an action was "performed in the exercise of consular functions" involves a two-part inquiry. First, the Court must determine whether the action in question involved a "consular function." Second, the Court must determine whether the action in question was performed "in the exercise of" that function. *See Gerritsen v. Consulado General de Mexico*, 989 F.2d 340, 346 (9th Cir. 1993) ("*Gerritsen II*"); *Ford*, 834 F. Supp. at 75; *Ewald*, 2012 WL 245244, at *4.

The term "consular function" is defined in Article 5 of the Vienna Convention. The first twelve subsections of Article 5 list specific consular functions. Article 5(m) is a "catch-all" that extends consular functions to include "any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving state or to which no objection is taken by the receiving State or which are referred to in the international agreements in force between the sending State and the receiving State." Vienna Convention, Article 5(m).

## III.  ANALYSIS

### A.  Motion to Remand

Plaintiffs filed this lawsuit in the 152nd Judicial District Court in Harris County, Texas [Docs. # 1-1 and # 1-2]. Defendants, together with Mexico and the Consulate, initially removed the case to federal court on the basis of 28 U.S.C. § 1331

(the existence of a federal question) and the FSIA.  Notice of Removal [Doc. # 1], at 2.  Plaintiffs seek a remand to state court because, after Mexico and the Consulate were dismissed from the case, Plaintiffs' claims arise solely under state law and there is no diversity of citizenship.  Plaintiffs' Motion to Remand [Doc. # 16], at 2.  Defendants contend that jurisdiction in this court remains proper under 28 U.S.C. § 1351 (which vests federal district courts with jurisdiction over all civil actions against consuls).  Defendants' Response [Doc. # 25], at 3.

Defendants are the current Consul General and the former Consul General of Mexico in Houston, Texas.  As such, civil actions against them are within the jurisdiction granted by Congress to this Court pursuant to 28 U.S.C. § 1351,[5] regardless of whether Defendants are sued in their individual or official capacities. *See Gerritsen II*, 989 F.2d at 344 (finding jurisdiction proper under § 1351 where Plaintiff sued consular officials in both their official and individual capacities). Accordingly, Plaintiffs' Motion to Remand [Doc. # 16] is **denied**.

_____

[5]     Although Delgado is no longer the Consul General for Mexico in Houston, Plaintiffs allege he engaged in misconduct while he served in that capacity.  Thus, he is within § 1351's grant of jurisdiction.  *See Politis v. Gavriil*, No. H-08-2988, 2008 WL 4966914 (S.D. Tex. Nov. 19, 2008) (assuming, without deciding, that § 1351 grants jurisdiction over the former consul of Greece and holding that consul was immune from suit under the Vienna Convention); *Koeppel & Koeppel v. Federal Republic of Nigeria*, 704 F. Supp. 521 (S.D.N.Y. 1989) (assuming § 1351 vests jurisdiction in federal district court in case against former Consul General of Nigeria).

**B.**    **Motion to Dismiss**

Plaintiffs assert claims of "negligence," "negligence per se," "gross negligence," and "breach of contract and/or implied contract" against Defendants, stemming, apparently, from Defendants' alleged wrongful termination of Plaintiffs' employment with and/or by Defendants in 2010.[6]   At the core, Plaintiffs challenge

---

[6]    Notably, Plaintiffs allege almost no facts in their Complaint.  *See* Complaint, ¶ 5, which states in its entirety:

> On or about December 28, 2010 and thereafter, the Plaintiffs, **GILBERTO CAMACHO JIMENEZ, ANA BERTHA RODRIGUEZ and CANDIDO SOTO VELAZQUEZ** were each separated by and from their employment with and/or by Defendants for refusing to participate in unlawful activities to their damage in an amount within the jurisdictional limits of this Court. Plaintiffs were employed by and performed their employment duties for the Defendants in the State of Texas.  Defendants submitted to the Laws of the State of Texas specifically in the contracts of employment entered into with the Plaintiffs.

> The separations, terminations, constructive terminations and/or failure to keep employed the Plaintiffs by the Defendants constitutes negligence, negligence per se, gross negligence and/or breach of contract and/or implied contract which was a proximate and/or producing cause of Plaintiffs' damages as stated above.

Defendants have not sought dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court notes, however, that the Complaint does not meet the pleading standards required under the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  However, Plaintiffs have filed affidavits with their Motion to Remand [Doc. # 16] and Response [Doc. # 17], explaining that allegedly Plaintiffs were asked to have sex, or recruit others to have sex, with Defendants in exchange for compensation and job protection.  In sum, Plaintiffs assert that their employment was terminated
(continued...)

employment decisions made by Defendants.

Plaintiffs' claims are barred by the consular immunity codified in Articles 5 and 43 of the Vienna Convention. Analysis under the *Gerritsen II* two-part test demonstrates that this suit must be dismissed because the remaining Defendants are immune from all of Plaintiffs' claims. First, managing and supervising consular employees is a "consular function" within the "catch-all" provision of Article 5(m) of the Vienna Convention. *See, e.g.*, *Ford*, 834 F. Supp. at 75. Mexico necessarily "entrusts" these functions to the Consul General in order to enable that officer and the Consulate to carry out other consular functions. Second, terminating employees' employment or not renewing their employment contracts are acts "performed in the exercise of" that function. *See Ewald*, 2012 WL 245244, at *5. Thus, even if Plaintiffs' employment was terminated wrongfully, Defendants' actions fall within the jurisdictional bar of Article 43 of the Vienna Convention and Defendants are immune from Plaintiffs' claims.

The few cases that have addressed claims against consular officials stemming from employment decisions are consistent with this conclusion and instructive. In *Ford v. Clement*, 834 F. Supp. 72 (S.D.N.Y. 1993) (Sotomayor, D.J.), the plaintiff (a

---

[6]     (...continued)
        because they refused to perform functions for the Consuls General that Plaintiffs contend were improper or unlawful.

former vice consul) alleged that Panama's Consul General in New York engaged in a "campaign of harassment" against her "designed to force [her] out of the Consulate." *Id.* at 74.  The former vice consul asserted, *inter alia*, tort causes of action against the Consul General and others for compensatory damages.  *Id.*  The court dismissed the claims on the grounds of consular immunity, citing Article 5(m) of the Vienna Convention.  In pertinent part, District Judge Sotomayor noted that:

> [C]onsular functions are implicated in this action—in particular, the management and supervision of the Vice Consul and other consular staff. These tasks come within the scope of Article 5(m) since they are fundamental to the efficient execution of all of the other consulate functions enumerated by the Vienna Convention.  Moreover, they are necessarily entrusted to the Consul  General by the sending State and indeed lie at the core of any efforts by theConsul General to perform its designated functions . . . . Mr. Clement's actions in dealing with Mrs. Ford and in communicating with Panamanian officials regarding Mrs. Ford were 'performed in the exercise of' his consular functions of managing and supervising the consular staff so as to effectuate other consular functions.

*Id.* at 75-77.

Similarly, in *Ewald v. Royal Norwegian Embassy*, No. 11-2116 SRN/SER, 2012 WL 245244 (D. Minn. Jan. 26, 2012) (unpublished), a former consular employee sued the Norwegian Embassy and the Honorary Consul for Norway in Minnesota on grounds of promissory estoppel, gender discrimination, reprisal, aiding and abetting, retaliatory harassment, and violation of the Equal Employment Pay Act.  *Id.* at *2.

The court, as in *Ford*, dismissed the case, holding: "Ewald's Complaint alleges causes of action all stemming from her hiring, employment, workplace atmosphere, and termination.  All of these alleged actions implicate the consular function of managing and supervising consulate employees, and as such fall within the consular function under Article 5(m) of the Vienna Convention."  *Id.* at *4 (internal citation omitted). The Court then addressed the second factor of the two-part inquiry: "Specifically, the acts included in Ewald's Complaint all relate to Gandrud's management and supervision of her as an employee of the Embassy.  Accordingly, his acts were performed in the exercise of a valid consular function—managing and supervising the employees of the Embassy—and he is therefore entitled to consular immunity for these acts."  *Id.* at *5.

Other cases interpreting Article 5(m) have broadly construed this provision. *See, e.g.*, *Gerritsen II*, 989 F.2d at 346 (threatening a protestor and protecting consular premises were consular functions); *Heaney*, 445 F.2d at 505-06 (entering into a contract to help publicize British abuses in Northern Ireland was a consular function); *Berdakin v. Consulado de la Republica de El Salvador*, 912 F. Supp. 458, 465 (C.D. Cal. 1995) ("obtaining space in which to operate the Consulate is a legitimate consular function," stating "the suit against the Consul arises out of his performance of a function inherent in his position . . . since without a lease such as the one entered into

by the Consul, there would be no Consulate at all"); *Koeppel & Koeppel*, 704 F. Supp. at 523 (providing shelter within the consulate premises to a citizen of the consul's state was a consular function).

While Plaintiffs attempt to focus this Court on their refusal to engage in illegal activities on behalf of Defendants, Plaintiffs' Memorandum [Doc. # 19], at 6-7, their argument is unavailing. First, it bears noting that Plaintiffs have not asserted any viable independent cause of action that protects them against such alleged wrongs. In any event, Defendants' motive in exercising a consular function (here, terminating an employee's employment or refusing to renew an employment contract) is irrelevant to the question of Defendants' consular immunity. *See Berdakin*, 912 F. Supp. at 465 ("[A]s the term 'consular functions' suggests, it is the fact that an act is not a legitimate consular function—whether or not the act is illegal—that renders its performance outside the exercise of consular function . . . . [I]t is irrelevant that the manner in which the Consul performed this function is alleged to have violated the law."); *Ewald*, 2012 WL 245244, at *5 ("Where the consular function is legitimate, the intentional or tortious nature of the acts performed in its exercise does not preclude consular immunity."). Finally, as a New York district court explained:

> Plaintiff's argument suggests that no immunity should be afforded if the consular official's conduct involves breach of the law. If this were the rule, however, there would be no immunity. Every lawsuit asserted

> against a consular official accuses him or her of some violation of legal
> rights.  Some unfairness to the wronged party is inherent in the notion of
> immunity.

*Koeppel & Koeppel*, 704 F. Supp. at 523-24.  Plaintiffs' claims are barred by consular

immunity and the Court thus lacks subject matter jurisdiction to resolve this case.

## IV.   <u>CONCLUSION</u>

The Court has jurisdiction under 28 U.S.C. § 1351 to address the claims

Plaintiffs assert against current and former consular officials.  Plaintiffs' motion to

remand this case is **denied**.

The Defendants are entitled to consular immunity under the Vienna Convention

on all the claims Plaintiffs assert.  Accordingly, Defendants' motion to dismiss this

case pursuant to Rule 12(b)(1) is **granted**.[7]

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion to Remand [Doc. # 16] is **DENIED**.  It is

further

**ORDERED** that Defendants' Second Motion to Dismiss [Doc. # 12] is

**GRANTED**.  This case is **DISMISSED WITH PREJUDICE**.

A final judgment will be filed separately.

---

[7]     The Court does not reach Defendants' arguments under Federal Rule of Civil
Procedure 12(b)(2) (lack of personal jurisdiction) and 12(b)(5) (insufficient service
of process).

SIGNED at Houston, Texas, this **15th** day of **October, 2013**.

_____
Nancy F. Atlas
United States District Judge